JEWELL v GRAND TRAVERSE COUNTY PROBATE JUDGE

1. COURTS—SUPERINTENDING CONTROL—SUPERINTENDENCE OF THE JU-
   DICIARY—JURISDICTION—COURT RULES.

   A petition for superintending control filed in circuit court and
   based on the court rule providing for superintendence of the
   judiciary was properly denied because proceedings under this
   court rule are initiated by a request for review made to the
   court administrator, and the Supreme Court, not the circuit
   court, has jurisdiction to investigate charges made under the
   rule (GCR 1963, 930).

2. ADOPTION—APPEAL AND ERROR—DELAYED APPEAL—DISCRETION.

   Denial by a circuit court of a motion for an order allowing a
   delayed appeal more than six months after the plaintiffs'
   adoption petition had been dismissed in probate court and after
   the plaintiffs had lost custody of the child involved was proper
   because delayed appeal is left to the discretion of the trial
   judge and the trial judge could have determined without abus-
   ing his discretion that the delay was too long in view of the
   strong public policy that child custody matters be resolved with
   all due speed (MCLA 722.26).

3. PARENT AND CHILD—CUSTODY—COURTS—JURISDICTION—APPEAL
   AND ERROR.

   An action brought by former foster parents of a child to have
   custody of the child restored to them under the Child Custody
   Act was properly dismissed by the circuit court for lack of
   jurisdiction where the probate court had already been involved
   in a statutory process concerning the custody of the child; the
   plaintiffs' remedy was a timely appeal of earlier orders of the
   probate court to the circuit court (MCLA 712A.2, 722.21 *et seq.;*
   GCR 1963, 701).

Appeal from Grand Traverse, James M. Fitzpa-

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts §§ 84, 86.
[2] 4 Am Jur 2d, Appeal and Error § 135.
[3] 4 Am Jur 2d, Appeal and Error § 136.

trick, J. Submitted Division 3 October 2, 1973, at Grand Rapids. (Docket No. 17278.) Decided January 14, 1974.

Complaint by David P. Jewell and Lois Jewell against Kenneth G. Mackness, Grand Traverse County Probate Judge, and others to restore custody of a child to the plaintiffs. Accelerated judgment for defendants. Plaintiffs appeal. Affirmed.

*Rosemary Scott,* for plaintiffs.

*Douglas J. Read,* for defendant Kenneth G. Mackness.

*Williams, Coulter, Forster & Cunningham,* for defendants Owen Johnson and Charles M. Forster.

*Glenn Aylsworth,* for defendants Sandy Smith and Vera Ward.

Before: HOLBROOK, P. J., and BASHARA and O'HARA,* JJ.

HOLBROOK, P. J. Mrs. Vera Tannery Ward gave birth to a daughter, Nancy, in 1964. Her husband died and Mrs. Ward became mentally ill and eventually was confined in Traverse City State Hospital by order of Grand Traverse Probate Judge Harold E. Hunsberger dated August 26, 1968. On the same date Nancy was made a temporary ward of the probate court on a foster-care basis, and was placed in the foster home of Mr. and Mrs. John Wood in Kingsley, Michigan. In January 1969 Nancy was placed in the foster home of David P. and Lois Jewell, where she stayed until June of 1972.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

On July 3, 1970, Mr. and Mrs. Jewell petitioned for the adoption of the daughter Nancy. Parental rights of the natural mother had not been terminated, and no consent had been given. On May 14, 1971, Mr. and Mrs. Jewell, through their attorney, George C. Kempton, petitioned for the appointment of one Almon R. Arnold as guardian ad litem for Nancy, and he was appointed that date by Judge Kenneth G. Mackness, defendant herein. Arnold appeared on August 11, 1971, before Judge Mackness and signed a consent to the adoption of the daughter Nancy.

Vera Ward was released from the hospital on April 9, 1970, in family-care status. She resided with friends and worked six days a week for a Mr. and Mrs. Phillip Smith as maid, cook, and babysitter. On October 12, 1971, Vera was granted convalescent status.

Desiring to have her child returned to her, Vera informally petitioned Judge Mackness for the return of the daughter Nancy. Judge Mackness scheduled a hearing for June 22, 1972. Mrs. Vera Ward was represented by attorney Glenn Aylsworth. Attorney Charles M. Forster had been appointed to represent the daughter Nancy on January 31, 1972. A Mr. Harley Peasley was appointed as guardian for Mrs. Vera Ward. Notice of the hearing was sent to all interested parties, and on the hearing date Aylsworth appeared on behalf of Mrs. Vera Ward. Forster appeared on behalf of the daughter Nancy, and attorney Joseph Zimmerman appeared in place of counsel of record, George Kempton, in behalf of Reverend and Mrs. Jewell. Also present were Mr. and Mrs. Smith, Vera's employers and friends, and Harley Peasley, Vera's guardian.

At the beginning of the hearing on June 22,

1972, Judge Mackness dismissed the adoption petition as follows:

"The court had, prior to that time, discussions by correspondence, primarily with Mr. Aylsworth, and determined that the intervention and representation by Mr. Aylsworth of Mrs. Ward should be construed also as being in opposition to the adoption petition which has been filed by the Jewells in file No. 726. That file was, therefore, not completed past the point of an investigation as to suitability on the—of the petitioners for adoption.

"It is the court's decision that the adoption petition and those proceedings should now be dismissed. And the court would so order."

Judge Mackness thereafter concluded that "the improvement which the natural mother has demonstrated over the period of the past several months while she has been on convalescent care, would justify the court in placing the child with the mother on a trial basis". He arranged that for the time being daughter Nancy should stay with her mother, and that her mother should stay in her employment with the Smiths. It was arranged that Mr. Peasley would administer VA, social security, and ADC funds for the Wards. He left the question of whether to let the Jewells visit Nancy up to Mrs. Ward. It was agreed that Nancy could got to a church summer camp, apparently the church of Rev. Jewell. At the conclusion of the hearing, Judge Mackness asked attorney Zimmerman if he had anything to add, and he said, "No".

Orders in accordance with this transcript were entered in the respective files on June 23, 1972. Nancy was placed with her mother and things went well for awhile and Nancy went to summer camp. No appeal was taken from the orders. The situation for Mrs. Ward began to deteriorate, and

on August 24, 1972, Mrs. Ward, over the objections of the caseworker, turned Nancy over to Mr. and Mrs. Jewell, who so notified the caseworker. Mrs. Ward relapsed and was readmitted to Traverse City State Hospital.

On September 14, 1972, Judge Mackness entered an order as follows:

"This court having entered an order on June 23, 1972 retaining the above captioned juvenile as a temporary ward and placing her in the custody of her natural mother, but with the strict admonition that her residence not be changed without the prior approval of this court, and the court now being informed that said juvenile is in the custody of David Jewell and Lois Jewell, without the approval of the court, and the court being further informed that the natural mother has been hospitalized and is unable at least temporarily to care for her, and that said ward is in need of foster care,

"Therefore it is ordered, that the county juvenile officer shall forthwith arrange for foster care for Nancy Ward and she shall immediately transport said child, with her clothing and possessions, to the foster home, where she shall remain pending information from the hospital regarding the status of the natural mother, or until further order of this court,

"It is further ordered, that David Jewell and Lois Jewell, their agents, servants, and anyone acting in concert with them are hereby enjoined and restrained from obstructing or interfering with the placement of the said Nancy Ward in foster care and from molesting or interfering with the physical custody and supervision of the foster parents and the jurisdiction of the county juvenile officer over said child.

"It is further ordered, that Charles M. Forster, attorney at law is hereby reappointed to represent Nancy Ward in these proceedings."

In accordance with this order Nancy was placed in the foster home of Mr. and Mrs. Phillip Smith.

In July of 1972 the Jewells retained new counsel, and the firm of Zerafa & Zerafa was substituted in the place of Menmuir & Zimmerman. A few months later, the Jewells again changed counsel, and A. Huxley Priebe was substituted in the place of the Zerafa firm. On December 1, 1972, Priebe filed a complaint in Grand Traverse County Circuit Court in behalf of the Jewells based upon the "Child Custody Act of 1970", requesting Nancy Ward be restored to the custody of the plaintiffs. This complaint was a collateral attack on the actions of the probate court, and does not purport to be an application for delayed appeal from either of the orders entered by Judge Mackness.

All the defendants joined in a motion for accelerated judgment, which pointed out that under the Constitution and statutes the probate court had original jurisdiction over Nancy as a dependent child, that the Child Custody Act had no application to the facts of this case, and that "the only relief available from an order of the juvenile division of the probate court affecting a person properly within its jurisdiction is by way of review on appeal to the circuit court". The motion asked that the complaint be dismissed with costs.

On January 22, 1973, the Jewells retained present counsel Rosemary Scott, and she was substituted for Priebe. She filed an opposition to the motion for accelerated judgment, an answer to the motion, a motion for delayed appeal from the June 23, 1972 order and the September 14, 1972 order, and a petition for superintending control based on GCR 1963, 930, superintendence of the judiciary in Michigan, against Judge Mackness alleging that he was prejudiced because of prior business dealings with the Jewells.

These matters came on to be heard before Grand

Traverse County Circuit Judge James M. Fitzpatrick on January 30, 1973. Attorney Rosemary Scott, after arguing that the Child Custody Act did apply, referred to the application for delayed appeal, arguing that the appealable issue was due process based upon her claim that evidence was not taken on either occasion, and that the Jewells received no prior notice of the pending September 18, 1972 action. She stated that the delay in seeking appeal was caused by the parade of attorneys consulted by Mr. and Mrs. Jewell.

Assistant prosecuting attorney Read pointed out to the court that the motion for delayed appeal was not accompanied by an affidavit of no culpable negligence as to delay, as was required by GCR 1963, 702.3. He also pointed out, that GCR 1963, 930 had no application in circuit court. Judge Fitzpatrick took the matter under advisement and rendered an opinion dated February 16, 1973, and signed an order dated April 2, 1973. Judge Fitzpatrick granted defendants' motion for accelerated judgment on the grounds that the action was improperly brought under the Child Custody Act of 1970 and that jurisdiction over Nancy Ward belonged in the probate court. He also ruled that the motion for delayed appeal did not comply with the requirements of GCR 1963, 702, and that the motion for superintending control under GCR 1963, 930 was improperly filed in the circuit court. Plaintiffs thereupon appealed to this Court. Plaintiffs since that time have been afforded access to the file for the adoption proceedings of Nancy Ward, minor.

We now proceed to decide the basic issues raised by plaintiffs on appeal.

First, the claim is made that the trial court erred in denying plaintiffs' motion for superintend-

ing control under GCR 1963, 930. Proceedings under GCR 1963, 930 are initiated by a request for review made to the court administrator, not by a motion to the circuit court. Moreover, the Supreme Court has jurisdiction under GCR 1963, 930, not the circuit court, to investigate charges made under the court rule. Therefore, plaintiffs' claim here is without merit.

Second, the claim is made that the trial court erred in denying plaintiffs' motion for delayed appeal from the probate court's determination. Trial court herein denied plaintiffs' motion for a delayed appeal stating that the motion did not comply with the requirements of GCR 1963, 702. GCR 1963, 702.3 provides that:

"Time for Filing the Motion. The motion for an order allowing appeal shall be filed within the same period as the claim of appeal must be filed in appeals as of right, except that a motion based upon subrule 702.1(4) may be filed within such further time as the court determines reasonable, upon a showing by affidavit that the delay did not arise from the moving party's lack of diligence."

In their affidavit in support of the motion for the delayed appeal, the plaintiffs tell of having hired three different attorneys from June 22, 1972, to October 26, 1972, and of consulting two other attorneys before finally hiring attorney Scott, who then suggested that "an appeal could be filed and perhaps should have been filed in this matter". Plaintiffs' counsel further stated in a memorandum:

"No appeal was taken from said order although the plaintiffs consulted counsel concerning the advisability of such appeal. They received advice that the [sic] it might be possible that the natural mother would be

returned to the Traverse City State Hospital and that the child might be returned to them if this occurred."

The trial court could easily have determined on the basis of these statements made in their affidavit that plaintiffs' delay in taking their appeal was due to a lack of diligence on their part or due to strategy decisions made on the advice of their attorneys. In any case, a request for an order allowing a delayed appeal is left to the discretion of the trial judge, who could have determined without abusing that discretion that granting a delayed appeal more than six months after the adoption petition was dismissed and plaintiffs had lost custody of the child was just too long a time given the strong public policy that child custody matters be resolved with all due speed. See MCLA 722.26; MSA 25.312(6); GCR 1963, 816.

Finally, the claim is made that the circuit court erred in granting defendants' motion for an accelerated judgment dismissing plaintiffs' complaint brought under the Child Custody Act of 1970, MCLA 722.21 *et seq.;* MSA 25.312(1) *et seq.,* for a lack of jurisdiction. The probate court assumed jurisdiction over Nancy Ward via MCLA 712A.2; MSA 27.3178(598.2), which reads in part:

"Except as provided herein, the juvenile division of the probate court shall have: * * *

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian,

*or who is otherwise without proper custody or guardianship."* (Emphasis supplied.)

MCLA 712A.2a; MSA 27.3178(598.2a) provides that the juvenile division of the probate court, having once exercised jurisdiction over a child pursuant to the above-quoted section, continues to have jurisdiction until two years after the maximum age of jurisdiction as set forth in MCLA 712A.2; MSA 27.3178(598.2) is reached or sooner by order of the probate court. Nothing in these statutes makes the probate court jurisdiction exclusive, however, save where the child is delinquent. See MCLA 712A.2(a); MSA 27.3178(598.2)(a). The Child Custody Act of 1970 does contain language, particularly in MCLA 722.26; MSA 25.312(6), suggesting that the circuit court can hear an original action for custody of a child. In *Sovereign v Sovereign,* 354 Mich 65; 92 NW2d 585 (1958), the jurisdiction of the probate court over juveniles without guardianship vis-a-vis that of the circuit court was discussed. The Sovereigns had separated but the courts denied them a divorce. Thereafter a child custody action was begun under MCLA 722.541; MSA 25.311, the predecessor to the Child Custody Act of 1970. Justice SMITH, with two justices joining in his opinion, felt that the ancient equity jurisdiction of the circuit court could be invoked to hear the child custody action, and that MCLA 722.541; MSA 25.311 merely recognized this equity power without itself conferring any jurisdiction. Justice EDWARDS with three other justices concurring agreed with Justice SMITH's result, but disagreed with the substance of his opinion, stating at 354 Mich 94–96; 92 NW2d at 585–586:

"We do not, however, agree that the circuit courts of Michigan sitting in chancery retain for all purposes the

broad jurisdiction over children formerly exercised by the chancery courts.

"Const 1908, art 7, § 10, does give circuit courts 'original jurisdiction in all matters civil and criminal not excepted in this Constitution and not prohibited by law.'

"See, also, 1948 CL 606.4; MSA 27.545; 1948 CL 722.541; MSA 25.311.

"But since the turn of the century, Michigan has been one of the leading states in the development of a court with specialized powers and functions in relation to dependent, neglected and delinquent children. * * *

"Further, as authorized by the Constitution, detailed legislation spelling out the jurisdiction and the powers of disposition of the probate court, juvenile division, in relation to children has been adopted. MCLA 712A.2, 712A.18; MSA 27.3178(598.2), 27.3178(598.18).

"Further, by specific statutory enactment, the circuit courts are granted appellate powers over the decisions of the probate court, juvenile division. 1948 CL 712A.22; MSA 27.3178(598.22).

"These constitutional and statutory provisions appear to follow a popular and legislative design in the creation of a division of the probate court with special jurisdiction, special powers of disposition, and specialized staffing as to children's problems in dependency and delinquency cases.

"We feel the revival of the use by the circuit court in chancery of broad powers in children's cases concurrent with the constitutional and statutory powers of the probate court, juvenile division, would be catastrophic for the children for whom this state has plainly intended to create these specialized services. The confusion and delay attendant upon the exercise of original jurisdiction by both circuit and probate courts in dependency and delinquency cases would confound court administration and undoubtedly result in lengthened and more damaging detention of children pending disposition.

"Fortunately, the constitutional and statutory provisions which we have cited, by creating specific excep-

tions to the general jurisdiction of the circuit courts, prohibit any such undesirable result.

"Further, where by statute a full and adequate legal remedy has been provided, it is generally held that equity will not entertain jurisdiction. [Citations omitted.]

"In the particular fact situation presented by the instant petition, however, we have a different problem. Here we have no allegations or showing of dependency or delinquency. The custody controversy is between 2 persons who are the natural and legal parents of the child. *With prior dismissal of the divorce suits, there is no specific statutory remedy available in any court— indeed, there is no provision for adjudication of this parental dispute over child custody at all—absent general chancery jurisdiction.* Hence, we concur with Mr. Justice SMITH in reversal for hearing by the chancellor." (Emphasis supplied.)

As the reading of the emphasized portion of Justice EDWARDS' opinion above illustrates, where another court of competent jurisdiction has been involved in a statutory process concerning the custody of a child, the general chancery jurisdiction of the circuit court, codified in MCLA 722.541; MSA 25.311, which was as aforesaid the predecessor to the Child Custody Act of 1970, cannot be invoked. Here, there was statutory involvement of the probate court concerning the custody of Nancy Ward. Plaintiffs' remedy, therefore, was that of a timely appeal of the earlier orders of the probate court to the circuit court. GCR 1963, 701; MCLA 712A.22; MSA 27.3178(598.22). Since this was not done, the general chancery power of the circuit court, codified originally in MCLA 722.541; MSA 25.311 and now in the Child Custody Act of 1970, could not properly have been invoked by the plaintiffs.

Affirmed. Costs to defendants.

All concurred.